[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff husband by complaint dated May 20, 1999 and made returnable to this court on June 15, 1999, seeking a dissolution of marriage on the grounds of irretrievable breakdown, an equitable distribution of the parties property, both real and personal and such other additional further relief as the Court deems just and proper. The plaintiff filed an amended complaint dated June 23, 1999.
The defendant appeared through counsel and filed an answer and cross complaint seeking a dissolution of the marriage of the parties, an equitable distribution of the parties property, both real and personal, counsel fees, alimony, pendente lite relief and such other, additional and further relief as the Court deems just and proper.
On December 7, December 8, 2000 and January 5, 2001, this matter was tried and heard by the court having previously been claimed to the limited contested list. The parties were represented throughout the proceedings by counsel. Testimony was received from the plaintiff, the defendant and Joseph N. Calvo, who testified as an expert witness for the plaintiff.[1] From the testimony and evidence produced at the trial and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The parties were intermarried on July 20, 1974 at Scotland, Connecticut. There were no minor children issue of this marriage, and no children were born to the wife since the date of this marriage. The Plaintiff has not received any state, federal or local assistance. The wife has not received any federal or local assistance but did receive state assistance approximately twenty years ago. The State of Connecticut, having been notified of this case has not expressed an interest in said case and has not filed an appearance in this matter. The parties have resided in this state for more than one year immediately prior to the date of the complaint and cross complaint. The court finds that it has jurisdiction over the parties and the marriage.
Based upon a review of the exhibits as well as the testimony at trial, the court finds the following additional facts.
The plaintiff husband is 56 years old. He graduated trade school and in 1963 began employment as a plumber's assistant. He obtained his own plumber's license in 1975 and started his own plumbing business known as Chamberlin Heating and Plumbing. He is currently operating said business which does both residential and industrial plumbing. Aside from CT Page 3750 occasional part time help, the plaintiff does not have any employees to assist him in his business.
The plaintiff's financial affidavit lists his gross income as a result of his plumbing business at $984.50 a week and a net income of $567.00 a week.
The parties have stipulated and the court finds that the business has no marketable value.
The plaintiff testified that in June of 1999, he was involved in a motorcycle accident that caused him serious injury. As a result of this accident, his ability to work was greatly diminished from June of 1999 until December of 1999. During said period, he hired his nephew to assist him and while he curtailed his physical work, he still went to the job sites to provide direction and assistance. He concluded his rehabilitation therapy in December of 1999. The plaintiff testified that although he does plumbing work at the present, his physical strength has been reduced and as a result his ability to do his job has been curtailed. While he had planned on retiring at age 55, he now would like to retire when he is 60 years old.
The plaintiff further testified that his wife has been a significant help to the operation of his plumbing business from its inception until such time as the parties separated. His wife balanced the financial books, did business paperwork, answered the telephone, paid bills, ordered supplies, and went to trade shows.
The plaintiff further testified that he has not filed his 1999 or 2000 income tax return as he did not have all of the necessary paperwork available for his accountant. He also testified that the income from the rental properties listed on his financial affidavit of $962.75 per week is the gross figure and not the net amount.
When the plaintiff moved out of the marital premises at 12 Russmar Trail, Columbia, Connecticut in March of 1999, he moved into an unfinished cottage at 11 Birch Point Trail, in Montville, Ct. He testified that said cottage did not have a toilet, a sink, a shower, or a heating system and that he relied on an extension cord to obtain electricity from a nearby property. He has made improvements in the property since he first moved into it. The plaintiff estimated that it would cost $15,000.00 to $20,000.00 to hire someone to repair said cottage but that if he did it himself, it would only cost him approximately $10,000.00 to $12,000.00.
The plaintiff first met his wife in 1970. He dated her for one year and CT Page 3751 then lived with the defendant and the defendant's daughter from a prior marriage for approximately four years. They married in 1974. The parties had two children from their marriage, one who died shortly after birth in 1974 and one who as born in 1975.
The plaintiff testified that his marital problems began approximately 18 months to two years prior to his moving out of the martial premises in 1999. The plaintiff also testified that his wife told his clients, family and his fellow tradesman that he is gay. He denies being gay and claims these statements have hurt him emotionally as well as cost him plumbing business. He has admitted that prior to his wife's statements as to his being gay, another person has alleged that he is gay but he attributes that more to joking than it being asserted for the truth. Mr. Chamberlin also testified that he has no prejudice towards gays. According to the plaintiff, the defendant's comments that the plaintiff is gay contributed to the breakdown of the marriage. The court does not find his testimony credible that the perception of his being gay had a negative impact on his plumbing business nor does the court find that this was a significant cause of the marital breakdown.
The defendant wife is 51 years old. She also testified that she first met her husband in 1970. At said time she had a young child from a prior marriage and was working at Cecpo. She ultimately merged her household with the plaintiff's and they married in 1974. At that time, she was working at the Shoprite Supermarket as a salad bar attendant. She testified that while her husband worked very hard doing the plumbing jobs, she took care of the books, accounts, and the paperwork associated with the business. She stopped assisting her husband when the parties separated in March of 1999 and is currently unemployed. She intends to apply for Social Security Benefits when she reaches age 62.
The defendant also testified that she did own and operate a business selling knitting machines in the late 80's or early 90's for a period of approximately five years. As for her future plans, the defendant testified that she might seek employment at a casino.
Joseph N. Calvo testified as an expert as to the value of the real estate owned by the parties.
The parties stipulated and the court finds that the properties have the following values:
1. 181 South Bigelow Road, Hampton, Ct.-$110,000.00
2. 11 Birch Point Trail, Montville, Ct.-$150,000.00 CT Page 3752
3. 12 Birch Point Trail, Montville, Ct.-$120,000.00
4. 423 Main Street, Willimantic, Ct.-$105,000.00.
5. 96-98 Spring Street, Willimantic, Ct.-$115,000.00
6. 32 Lebanon Avenue, Willimantic, Ct.-$90,000.00
7. 18 Lafayette Street, Willimantic, Ct.-$90,000.00
8. 12 Russmar Trail, Columbia, Ct.-$295,000.00
The court does not find that either party significantly caused the breakdown of the marriage and it is unclear as to the causes of the marital breakdown. This has been a long term marriage with both parties having worked during the course of the marriage to contribute to the assets accumulated by the parties.
After taking into consideration all of the criteria set forth in General Statutes §§ 46b-62, 46b-81 and 46b-82 and applying the same to the evidence, the court enters the following orders:
1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
2. The court finds that this has been a marriage of 26 years. While the court has considered all the criteria set forth in Connecticut General Statutes § 46b-82 concerning alimony, in setting the amount and deviations of alimony, the court is mindful of the length of the marriage, the age of the parties, and the employment and earning capacity of the parties. The defendant who is now fifty-one years old does not have a marketable skill and would need additional education or training to enhance her earning capacity. Accordingly, the court orders the plaintiff to pay to the defendant the sum of $200.00 per week as periodic alimony for a period of 12 years. Said alimony shall terminate upon the death of the defendant, the remarriage of the defendant or the death of the plaintiff. This alimony obligation is intended as a separate maintenance and said obligation shall not be affected by any discharge in bankruptcy.
3. The defendant shall be entitled to medical insurance CT Page 3753 under COBRA for the maximum period allowed by law. The plaintiff shall be responsible for any premium attributable to the defendant's coverage for a one year period.
4. The plaintiff shall convey to the defendant by quitclaim deed any and all interest he may have in the property located at 11 Birch Point Trail, Montville, Ct. The plaintiff shall pay the $7000.00 lien on said property within 30 days of this decision. The defendant shall hold the plaintiff harmless from the taxes and insurance on said property. The plaintiff will install the furnace currently stored at 12 Russmar Trail, Columbia, Ct. in said property at 11 Birch Point Trail, Montville, Ct. within 45 days of this decision or pay for the cost of installation.
5. The plaintiff shall convey to the defendant by quitclaim deed and/or by executing any documents reasonably necessary to effectuate the transfer of any and all interest he may have in the time share known as units 100-101, unit 105, unit 106, Sand Castle Building, Royal Coachman, Provincetown, MA. The defendant shall hold the plaintiff harmless from the taxes, insurance or any time share expenses on said property.
6. The defendant shall convey to the plaintiff by quitclaim deed and/or by executing any documents reasonably necessary to effectuate the transfer of any and all interest she may have in the time shares known as Inn on Harbor, Newport, R.I. and Oceancliff, Newport, R.I. The plaintiff shall hold the defendant harmless from the taxes, insurance and any time share expenses on said property.
7. The defendant shall convey to the plaintiff by quitclaim deed any and all interest she may have in the property known as Lot #26, Unit 3, Block 29, Calvada No. Subdivision, Ney County, Nevada. The plaintiff shall hold the defendant harmless therefrom from the taxes and insurance on said property.
8. The plaintiff shall convey to the defendant by CT Page 3754 quitclaim deed any and all interest he may have in the property known as 12 Birch Point Trail, Montville, Ct. The defendant shall hold the plaintiff harmless from the taxes and insurance on said property.
9. The defendant shall convey to the plaintiff by quitclaim deed any and all interest she may have in the property known as 181 So. Bigelow Street, Hampton, Ct. The plaintiff shall assume, pay and hold the defendant harmless from the mortgage, taxes and insurance on said property.
10. The defendant shall convey to the plaintiff by quitclaim deed any and all interest she may have in the property known as 18 Lafayette Street, Willimantic, Ct. The plaintiff shall hold the defendant harmless from the taxes and insurance on said property.
11. The plaintiff shall convey to the defendant by quitclaim deed any and all interest he may have in the property known as 423 Main Street, Willimantic, Ct. The defendant shall hold the plaintiff harmless from the taxes and insurance on said property.
12. The title to the property known as 32 Lebanon Avenue, Willimantic, Ct. shall remain vested in the defendant free of any interest of the plaintiff. The defendant shall hold the plaintiff harmless from the taxes and insurance on said property.
13. The defendant shall convey to the plaintiff by quitclaim deed any and all interest she may have in the property known as 96-98 Spring Street, Willimantic, Ct. The plaintiff shall hold the defendant harmless from the taxes and insurance on said property.
14. The title to the property known as 12 Russmar Trail, Columbia, Ct. shall remain vested in the plaintiff free of any interest of the defendant. The plaintiff shall assume, pay and hold the defendant harmless from the first mortgage on said property in the approximate amount of $45,000.00 and shall hold the defendant harmless from the taxes and insurance CT Page 3755 on said property.
15. The plaintiff shall retain his ownership of the following accounts free of any interest of the defendant.
 a. People Bank IRA account #151200004 — approximate balance $10,490.00.
 b. Galaxy Funds SEP IRA account #105-5101577317 — approximate balance $4,682.00.
 c. Galaxy Funds SEP IRA account #106-5101577317 — approximate balance $5,698.00.
16. The defendant shall retain her ownership of the People's Bank IRA account #151290150 in the approximate balance of $20,787.00 free of any interest of the plaintiff.
17. The plaintiff shall assign one half of the present value of the following retirement accounts through a Qualified Domestic Relations Order within 30 days of this order.
 a. People's Bank IRA account #151290149 — approximate balance $23,670.00.
 b. People's Bank IRA account #151200033 — approximate balance $27,514.00.
 c. People's Bank IRA account #151290237 — approximate balance $73,452.00.
 d. Liberty Funds SEP IRA account #R 050182900001 — approximate balance $13,068.15.
 e. Putnam Investments IRA account #0365124284 — approximate balance $16,466.00.
18. The plaintiff shall retain his 40 shares of Wendy's Corp. stock free of any interest of the defendant.
19. The plaintiff shall have sole ownership of the business known as Chamberlin Heating and Plumbing including all plumbing, tools, equipment, supplies CT Page 3756 and the business accounts at People's Bank in the approximate amount of $1,000.00 and the business account at Fleet Bank in the approximate amount of $1,000.00 as reflected on the plaintiff's financial affidavit. he plaintiff shall hold the defendant harmless for any debts and liabilities arising out of the operation of said business.
20. Each party shall equally be responsible for any tax liability and equally share any tax refund from the State of Connecticut and United States tax liability for the 1999 and 2000 tax years.
21. The parties shall equally split the People's Bank rental account in the approximate amount of $4,000.00 as reflected on the plaintiff's financial affidavit.
22. The plaintiff shall have ownership of the 1996 Jaguar automobile and 2000 Chrysler P.T. Cruiser automobile free and clear of any claims of the defendant and the plaintiff shall assume and hold the defendant harmless from the outstanding loans on said automobiles.
 The plaintiff shall also have ownership of the following automobiles free and clear of any claim of the defendant.
a. 1959 Ford Van truck
b. 1988 GMC 7000 Series
c. 1993 Ford Aerostar
 The defendant shall have ownership of the 1995 Chevrolet Gladiator Custom Van automobile free and clear of any claim of the plaintiff.
 The parties shall execute any documents reasonably necessary to effectuate the transfer of the parties interest in said motor vehicles.
23. The plaintiff shall have ownership and the defendant will waive any claim to all unregistered motor vehicles, including trailers, car, truck related CT Page 3757 spare parts, all of the boats, related tools and equipment including trailers, as located on the real property in Columbia, Ct.
24. The defendant shall have ownership of all of the jewelry currently in her possession free and clear of any claim of the plaintiff.
25. Each party shall retain possession of and are entitled to all household goods, furnishings and possessions now under their possession and control.
26. The parties shall pay the balance of approximately $45,230.00 currently being held by Attorney's Asselin and Connoly to the debt due People's Bank, account #11245364001 which has an approximate debt balance of $49,992.30. The plaintiff shall be solely responsible for any additional balance due on said debt and shall hold the defendant harmless therefrom.
27. The $36,000.00 cash on hand as reflected on the plaintiff's and defendant's financial affidavits shall be equally divided between the parties.
28. Each party shall be responsible for his and her own attorney's fees costs.
29. Except as specifically otherwise ordered, each party shall be responsible for the debts set out in their respective financial affidavits and hold the other party harmless therefrom.
30. Plaintiff's counsel shall prepare and file within thirty days of this decision a judgment file and both counsel shall sign the judgment file.
Edward C. Graziani, J. Superior Court Judge